UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

MACELLAS HARLAN,               )
                               )
    Plaintiff,                 )   No. 1:13-CV-263
                               )   *Judge Curtis L. Collier*
v.                             )
                               )
UNKNOWN OFFICER HOLLAND;[1] UNIT )
MANAGER DOUGLAS GARRETT;       )
CPL. UNKNOWN CRIAN; WARDEN     )
STANTON HEIDLE;[2] OFFICER JOHN )
DOE; OFFICER UNKNOWN FULS; All )
Sued in Their Official and Individual )
Capacities;                    )
                               )
    *Defendants.*              )

## **MEMORANDUM**

Marcellas Harlan ("Plaintiff") has filed this *pro se* complaint for damages pursuant to 42 U.S.C. § 1983 (Court File No. 2). Plaintiff, an inmate incarcerated at Bledsoe County Correctional Complex in Pikeville, Tennessee, alleges Defendant Officer Holland ("Officer Holland") subjected him to a verbal racial epithet and accompanying actions in violation of the Eighth and Fourteenth Amendments. Plaintiff further asserts, that in response to Officer Holland's behavior, Defendant Officer Fuls ("Officer Fuls") stepped in and told Officer Holland to stop at which time Officer Holland and Officer John Doe ("Officer Doe") started laughing. Plaintiff also complains Defendants Unit Manager Douglas Garrett ("Unit Manager Garrette"), Cpl. Crian ("Cpl. Crian"), and Warden

---

[1] Plaintiff does not know the first names of any of the defendants other than Douglas Garrett and Warden Stanton Heidle; thus he indicated first names as "unknown."

[2] The Court corrected the misspelling of the Warden's name and **DIRECTS** the Clerk to correct the spelling of the Warden's name on the Court's CM/ECF docket.

Stanton Heidle ("Warden Heidle") failed to reprimand Holland for his behavior.

Plaintiff seeks damages for mental anguish, psychological torture, and pain and suffering in the amount of $90,000.00 from each defendant. In addition, Plaintiff seeks one million dollars in punitive damages from each defendant.

For the reasons set forth below, after liberally reviewing the complaint and accepting all of its allegations as true and construing them in the light most favorable to Plaintiff, the Court concludes Plaintiff's complaint will be **DISMISSED** (Court File No. 2), and his motion to proceed *in forma pauperis* will be **GRANTED IN PART** and **DENIED IN PART** (Court File No. 1).

**I.     APPLICATION TO PROCEED** *IN FORMA PAUPERIS*

It appears from the application to proceed *in forma pauperis* submitted by Plaintiff that he lacks sufficient financial resources at the present time to pay the required filing fee of $350.00. Plaintiff is not relieved of the ultimate responsibility of paying the $350.00 filing fee. Since Plaintiff is an inmate in custody at Bledsoe County Correctional Complex, in Pikeville, Tennessee, his *in forma pauperis* application will be **GRANTED IN PART** and **DENIED IN PART** (Court File No. 1). Specifically, Plaintiff's *in forma pauperis* application will be **GRANTED** to the extent that he does not have to pay the total fee at this time but **DENIED** to the extent he will not be excused from paying the filing fee (Court File No. 1). Rather, Plaintiff will be **ASSESSED** and **SHALL** pay the civil filing fee of three-hundred and fifty dollars ($350.00) under the Prison Litigation Reform Act ("PLRA"), Pub. L. 104-134, 110 Stat. 1321, codified in 28 U.S.C. § 1915.

Pursuant to 28 U.S.C. § 1915(b)(1)(A) and (B), the custodian of Plaintiff's inmate trust account at the institution where he now resides **SHALL** submit to the Clerk, United States District Court, 900 Georgia Avenue, Room 309, Chattanooga, TN 37402, as an initial payment, whichever

is greater:

> (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or
>
> (b) twenty percent (20%) of the average monthly balance in Plaintiff's inmate trust account for the six-month period preceding the filing of the complaint.

Thereafter, the custodian **SHALL** submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350.00, as authorized under 28 U.S.C. § 1914(a), has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk of Court will be **DIRECTED** to send a copy of this memorandum and judgment to the Warden and Custodian of Records at Bledsoe County Correctional Complex in Pikeville, TN, the Commissioner of the Tennessee Department of Corrections, the Attorney General for the State of Tennessee, and the Court's Financial Deputy to ensure the custodian of Plaintiff's inmate trust account complies with the portion of the Prison Litigation Reform Act relating to payment of the filing fee.

The agency having custody of Plaintiff **SHALL** collect the filing fee as funds become available. This order shall become a part of Plaintiff's file and follow him if he is transferred to another institution. The agency having custody of Plaintiff shall continue to collect monthly payments from Plaintiff's prisoner account until the entire filing fee of $350.00 is paid. In addition, Plaintiff will also be **ORDERED** to provide the prison officials at any new institution with a copy of this order.

**II. SCREENING**

The Court screens the complaint to determine whether it should be dismissed as frivolous,

3

Case 1:13-cv-00263-CLC-WBC   Document 3   Filed 12/18/13   Page 3 of 9   PageID #: 29

malicious, or for failure to state a claim. 28 U.S.C. § 1915(e)(2) and § 1915A. When performing this task, the Court bears in mind that the pleadings of *pro se* litigants must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

During the screening process, the Court is mindful that where a deficiency in the complaint is able to be cured, Plaintiff shall be permitted to amend his complaint to cure such deficiency. *See LaFountain v. Harry,* 716 F.3d 944 (6th Cir. 2013) (overruling in part, *McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir. 1997), and holding a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA). However, a complaint must contain more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action[;]" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555 (citations omitted).

### III. PLAINTIFF'S ALLEGATIONS

In his complaint, Plaintiff claims that on July 23, 2013, Officer Holland handcuffed him with a set of cuffs that had a black leash attached to them to escort him back to his cell after his one hour of recreation. While being escorted, Plaintiff told another inmate that the cuffing with a leash was dehumanizing and sophisticated slavery (Court File No. 2, p. 5). Officer Holland stated that if it was sophisticated slavery it would include certain antics which he demonstrated–i.e., flapping the

4

leash, whistling with pursed lips, and making a lashing sound, "using racial epithet as if [Plaintiff] was his slave being beating [sic] by a slave-driver." (Court File No. 2, p. 5). Officer Fuls told Officer Holland to stop at which time Officer Holland apparently obeyed Officer Fuls, but Officer Holland and Officer Doe began laughing. Unit Manager Garrette, Cpl. Crian, and Warden Heidle did not reprimand Officer Holland for his behavior.

IV. ANALYSIS

A. 42 U.S.C. § 1983

To state a viable claim under 42 U.S.C. § 1983 a plaintiff must allege: (1) he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978); *Brock v. McWherter*, 94 F.3d 242, 244 (6th Cir. 1996). To maintain a cause of action for damages under 42 U.S.C. § 1983, a plaintiff must also allege the defendant caused the plaintiff injury and show actual damages. *See Carey v. Piphus*, 435 U.S. 247, 255 (1978); *Chatman v. Slagle*, 107 F.3d 380, 384 (6th Cir. 1997); *Zehner v. Trigg*, 952 F.Supp. 1318, 1321 (S.D. Ind.), *aff'd* 133 F.3d 459 (7th Cir. 1997).

Although the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts underlying the claim, the plaintiff must provide sufficient allegations to give defendants fair notice of the claims against them. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). Thus, to state a § 1983 claim, a plaintiff must allege sufficient facts that, if true, would establish he incurred an injury when the defendants deprived him of a right secured by the Constitution of the United States while they acted under color of law. *See Brock*, 94 F.3d at 244.

5

B.     **Verbal Harassment**

The Court construes the allegations in the light most favorable to Plaintiff, as required. After being handcuffed by Officer Holland with cuffs that had a black leash attached to them, Plaintiff commented that this type of cuffing was dehumanizing and sophisticated slavery. Officer Holland replied, that if it was sophisticated slavery it would include certain behaviors which he demonstrated–i.e., flapping the black leash, whistling with pursed lips, and making a lashing sound acting as if Plaintiff was a slave being beaten. In addition to the demonstration, Officer Holland also used a "racial epithet." Officer Fuls stepped in and told Officer Holland to stop the antics. At that time Officer Holland apparently stopped, but he and Officer Doe began laughing. Officer Holland was never reprimanded or punished by Unit Manager Garrette, Cpl. Crian, or Warden Heidle.

Although today's society deems such treatment and language reprehensible and very unprofessional, under our current law, this isolated incident of use of a racial epithet and accompanying antics are not constitutional violations. *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir. 1986) (name calling without "any appreciable injury" did not violate inmate's constitutional rights). Harassment and intimidation alone, do not give rise to a constitutional violation cognizable under § 1983. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545-46 (6th Cir.), *cert. denied*, 543 U.S. 837 (2004). Allegations of verbal harassment and verbal abuse by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment, and thus do not rise to a constitutional violation. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (per curiam). Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id*. at 954-55; *see also Estell v. Gamble*, 429 U.S. 97, 104 (1976). In addition, the Sixth Circuit has instructed "[t]he use of a racial epithet

6

by itself is not an actionable violation of the Equal Protection Clause." *King v. City of Eastpointe,* 86 Fed. Appx. 790, 814 (6th Cir. 2003) (citing *Owens v. Johnson,* 221 Fed. 3d 1335 (6th Cir. June 23, 2000), *available at* 2000 WL 876766, at *2 (Unpublished Order) ("The occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude.")).

Use of insulting racial epithets accompanied by "harassment or a violation of established rights may amount to a separate equal protection claim." *See Williams v. Kaufman County,* 352 F.3d 944, 1013 & n. 61 (5th Cir. 2003). In other words, racial language and gestures of a custodial officer, without more, do not amount to a constitutional violation. *See Fisher v. Woodson*, 373 F.Supp. 970, 973 (E.D. Va. 1973) ("The alleged threatening language and gestures of penal official [described as a racist attitude] do not, even if true, constitute constitutional violations"); *Dunbar v. Barone,* 487 Fed. Appx. 721, (3rd Cir. July 10, 2012), *available at* 2012 WL 2775024, at *2 ("[T]he display of white pillowcase hoods, Nazi salutes, and the posting of an offensive picture, while unprofessional and reprehensible do not amount to a violation of constitutional rights."); *Whittenberg v. Bortolamedi,* 2007 WL 521399 (E.D. Cal. Feb. 15, 2007) (drawing by correctional officials of racially derogatory pictures on inmate's prison identification card insufficient to raise an equal protection claim).

Although verbal harassment or threats with some reinforcing act accompanying them may state a constitutional claim, Plaintiff has not alleged that the purported isolated incident of Officer Holland's use of a verbal racial epithet and derogatory antics were accompanied by any type of reinforcing physical act that might allow the slur to state a separate equal protection claim. *See Northington v. Jackson*, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head

7

and threatened to shoot); *Douglas v. Marino*, 684 F.Supp. 395 (D.N.J. 1988) (prison employee threatened inmate with a knife).

In summary, the Sixth Circuit has concluded that an isolated incident of a verbal racial slur and exchanges of taunts between a prisoner and guard do not establish a constitutional violation. *Ivey*, 832 F.2d at 954-55. As the Sixth Circuit has explained:

> To establish a violation of the Equal Protection Clause, a prisoner must prove that a discriminatory intent or purpose against a disfavored class or excluded group was a factor in an action taken by prison officials. *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). The occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland County*, 758 F.2d 147, 152 (6th Cir.1985). The petty exchanges of insults between a prisoner and guard do not amount to constitutional torts. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir.1987) (per curiam).

*Owens v. Johnson,* 221 F. 3d 1335 (6th Cir., June 23, 2000), *available at* 2000 WL 876766, at *2.

Although the Court completely understands why Plaintiff would be offended by the alleged treatment, Plaintiff's allegations of an isolated incident of use of a verbal epithet accompanied by Officer Holland's antics in response to Plaintiff's comment that such handcuffing was sophisticated slavery, does not rise to the level of a viable civil rights claim. Consequently, any failure on the part of the other defendants to reprimand Holland for his verbally abusive behavior does not rise to a constitutional violation.

In summary, neither the Eighth Amendment nor the Equal Protection Clause afford the Court the power to correct every action, statement, or attitude of a prison official with which it might disagree. Consequently, Plaintiff's claims do not rise to the level of a viable § 1983 civil rights claim.

Accordingly, the complaint will be **DISMISSED** *sua sponte,* in its entirety, for failure to

state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A.

V. CONCLUSION

In light of the above analysis and applicable law, it would have been futile to allow Plaintiff to amend his complaint since claims of verbally racial slurs and taunts, of the type alleged here, are not remediable by amendment since such does not qualify as a constitutional violation. *LaFountain v. Harry,* 716 F.3d 944 (6th Cir. 2013). For the reasons set forth above, Plaintiff's complaint will be **DISMISSED** *sua sponte* in its entirety for failure to state a claim upon which relief may be granted under 42 U.S.C. § 1983. 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A (Court File No. 2). In addition, his motion to proceed *in forma pauperis* will be **GRANTED IN PART** and **DENIED IN PART** (Court File No. 1).

An appropriate order will enter.

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**

9